WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CV-24-02385-PHX-KML |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| $49,800.00 in US Currency, et al., | |
| Defendants. | |

Plaintiff United State of America seeks entry of a default judgment of forfeiture regarding the interests of Juvenile 1, Juvenile 2, Karla Ruth Reyna-Grijalva, and all others in $49,800 and $37,553 in United States Currency. (Doc. 17.) The court must consider seven factors when deciding whether to enter default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The seven factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* Analysis of these factors establishes default judgment is appropriate.

**1. Possible Prejudice to the United States**

The first factor regarding the prejudice to the United States weighs in favor of default judgment because if "default judgment is not granted, [the United States] will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d

1172, 1177 (C.D. Cal. 2002).

**2. Merits of the Claims and Sufficiency of the Complaint**

The second and third factors require assessing the merits of the United States's claims and the sufficiency of its complaint. These factors "are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).

According to the verified complaint, the currency at issue is the product of violations of 8 U.S.C. § 1324(a). That is the "federal law [that] prohibits encourag[ing] or induc[ing] illegal immigration." *United States v. Hansen*, 599 U.S. 762, 766 (2023). The complaint alleges Juvenile 1 and Juvenile 2 made "tens of thousands of dollars by scheduling" drivers "to arrive at the U.S./Mexico border . . . [and] transport illegal aliens further into the U.S." (Doc. 1 at 3-4.) The juveniles' "mother Reyna-Grijalva assisted with their illegal human smuggling activities." (Doc. 1 at 5.) The complaint provides the following factual basis for these assertions.

Through monitoring a social media account belonging to Juvenile 1, law enforcement officers "observed Juvenile 1 soliciting drivers to travel to areas along the southern U.S. border to pick up illegal aliens in exchange for money." (Doc. 1 at 6.) The social media account "had frequently communicated" with another account belonging to a non-party who "was a high-ranking human smuggling coordinator." (Doc. 1 at 6.) The non-party was indicted but fled to Mexico where "she continues to coordinate human smuggling activity." (Doc. 1 at 8.)

Juvenile 1 had a second social media account that also was used to solicit "drivers to pick up and transport illegal aliens." (Doc. 1 at 8.) The account had images and videos of firearms, bulk currency, images of locations known for alien smuggling, and images of messages from other accounts "talking about alien smuggling." (Doc. 1 at 8.) The account contained direct solicitations to others to drive illegal aliens to Phoenix. Messaging on both of Juvenile 1's accounts occurred while he was at his home in Glendale, Arizona. In

connection with surveillance on that home, officers observed Juvenile 1 and Reyna-Grijalva drive to a parking lot where "suspected illegal aliens" exited one vehicle and entered another. (Doc. 1 at 9.) Juvenile 1 appeared to pay one of the drivers. (Doc. 1 at 9.)

In September 2022, officers executed a search warrant at the Glendale home. Juvenile 2 was inside the home at the time and "did not respond to commands to exit the residence." (Doc. 1 at 10.) Juvenile 2 only exited after "an explosive breach was used on [his] bedroom window." (Doc. 1 at 10.) Inside Juvenile 2's bedroom officers found a backpack containing the $49,800 in United States currency that is the subject of this suit. (Doc. 1 at 13.) Juvenile 2 later stated officers "already knew everything that he was into" and "it had [been] a long time since he had done anything," both statements referencing human smuggling. (Doc. 1 at 13.) Juvenile 2 stated his phone contained pictures of bulk cash and a later review of that phone "revealed extensive evidence he was heavily involved in human smuggling." (Doc. 1 at 14.) At the time of the search, Juvenile 2 was an unemployed high school senior and the officers found it "extremely suspicious" he had $49,800 in his possession. (Doc. 1 at 13.) Officers concluded it was "likely" Juvenile 2 "was participating in human smuggling." (Doc. 1 at 14.)

In executing the search warrant at the Glendale home, officers also located $37,553 in the glovebox of a parked car. That is the other currency at issue in this suit. Reyna-Grijalva claimed the currency was her life savings. Officers seized both the $49,800 and $37,553 as potential proceeds of human smuggling.

Months after the currency was seized, Reyna-Grijalva submitted a "petition for remission or mitigation." (Doc. 1 at 14.) That petition claimed some of the currency was from her legitimate employment and "a settlement [she] won from [her] home." (Doc. 1 at 14.) The remaining currency was "a loan that [she] requested." (Doc. 1 at 15.) The government rejected the petition after reviewing documents Reyna-Grijalva provided because it did not believe they provided sufficient evidence to establish the property "came from legitimate sources." (Doc. 1 at 15.) The government also investigated Reyna-Grijalva's income and determined that she "never had any reported income in the state of

Arizona." (Doc. 1 at 16.) Reyna-Grijalva sent additional communications but eventually requested the matter be "referred for court action." (Doc. 1 at 16.) The United States then filed this in rem action, alleging there was sufficient evidence the defendant currency was proceeds of violations of 8 U.S.C. § 1324.

By statute "the gross proceeds" of encouraging or inducing illegal immigration is "subject to forfeiture." 8 U.S.C. § 1324(b). The burden is on the government "to establish, by a preponderance of the evidence, that [those gross proceeds are] subject to forfeiture." 18 U.S.C. § 983(c).

The allegations set forth above establish by a preponderance of evidence that the $49,800 and $37,553 in United States Currency are gross proceeds from activity prohibited by 8 U.S.C. § 1324. The merits of the claim and the sufficiency of the complaint weigh in favor of default judgment.

### 3. Amount in Controversy

The fourth default judgment factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). When a large sum is at stake, this factor may weigh against default judgment. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014). Here, the amounts are considerable but are proceeds from illegal activity, so this factor still supports default judgment. *See United States v. $44,680.00 in U.S. Currency*, No. CV191009DMGJEMX, 2019 WL 6972693, at *2 (C.D. Cal. Aug. 1, 2019) ("While the sum of money at stake is not insubstantial, the allegations demonstrate that it is more likely than not traceable to illicit drug trafficking in violation of federal law.").

### 4. Dispute Over Material Facts

The fifth factor is whether there are any disputes over material facts. The decision by potential claimants to not participate means there is no indication of such disputes. This factor weighs in favor of default judgment.

### 5. Excusable Neglect

The sixth factor looks to whether potential claimants' behavior might be due to excusable neglect. Claimants were properly served in September 2024. (Doc. 10 at 1.) Notice of the forfeiture was also placed on the official government internet site for 30 consecutive days, beginning on September 12, 2024. (Doc. 10-1 at 1.) It has now been approximately seven months since potential claimants were served and they have not appeared. This behavior establishes the potential claimants have intentionally chosen to ignore this suit and their behavior is not due to excusable neglect. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendants' failure to respond to complaint could not "be attributable to excusable neglect" because "[a]ll were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion."). This factor supports entry of default judgment.

### 6. Policy Favoring Decisions on the Merits

The seventh factor recognizes a preference for resolving matters on their merits. This factor, as always, weighs against entry of default judgment. "However, the mere existence of Fed.R.Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (quotation marks and citation omitted).

### 7. Default Judgment is Merited

On balance the factors support entry of default judgment.

/
/
/
/
/
/
/
/
/

Accordingly,

**IT IS ORDERED** the Motion for Default Judgment (Doc. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** the interests of Juvenile 1, Juvenile 2, Karla Ruth Reyna-Grijalva (AKA Karla Reyna and Karla Reyna-Grijalva), and all others in defendant property is forfeited to the United States of America in accordance with 18 U.S.C. § 981(a)(1)(C) and 8 U.S.C. § 1324(b)(1) and (2).

**IT IS FURTHER ORDERED** that the defendant property be disposed of according to law.

Dated this 27th day of May, 2025.

Honorable Krissa M. Lanham
United States District Judge